**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ELLEN ILLUZZI<br>1147 Putnam Blvd<br>Wallingford, PA 19086<br><br>v.<br><br>TIERNEY & PARTNERS, INC.<br>d/b/a TIERNEY COMMUNICATIONS<br>200 South Broad Street<br>Philadelphia PA 19102<br><br>and<br><br>MARY STENGEL AUSTEN<br>c/o TIERNEY & PARTNERS, INC.<br>d/ ELLEN M. ILLUZZI<br>b/a TIERNEY COMMUNICATIONS<br>200 South Broad Street<br>Philadelphia PA 19102<br><br>and<br><br>DEBRA GRIFFIN<br>c/o TIERNEY & PARTNERS, INC.<br>d/b/a TIERNEY COMMUNICATIONS<br>200 South Broad Street<br>Philadelphia PA 19102<br><br>and<br><br>THE INTERPUBLIC GROUP of<br>COMPANIES, INC.<br>200 South Broad Street<br>Philadelphia PA 19102<br><br>    Defendants. | CIVIL ACTION NO:<br><br>COMPLAINT WITH JURY DEMAND |

## CIVIL ACTION COMPLAINT

Plaintiff Ellen Illuzzi (hereinafter "Plaintiff"), by and through undersigned counsel, hereby complains as follows against Defendants Tierney & Partners, Inc. d/b/a Tierney Communications, Mary Stengel Austen, Debra Griffin and Interpublic Group of Companies, Inc. (hereinafter collectively referred to as "Defendants"):

## INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Defendants of the Fair Labor Standards Act ("FLSA") and the Family and Medical Leave Act ("FMLA"). Defendants intentionally failed to pay Plaintiff overtime compensation earned while in the employ of Defendants. Thereafter, Defendants fired Plaintiff when she complained about same, and in retaliation for her taking FMLA leave. As a result of this action, Plaintiff suffered damages as set forth herein.

## JURISDICTION AND VENUE

2. The Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims herein arise under laws of the United States.

3. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice.

4. Pursuant to 28 U.S.C. §§ 1397(b)(1) and (b)(2), venue is properly laid in this judicial district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

5. The foregoing paragraphs are incorporated herein as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. Defendant Tierney & Partners, Inc. d/b/a Tierney Communications (hereinafter "Defendant Tierney") is a corporation that does business in Pennsylvania.

8. Defendant Mary Stengel Austen (hereinafter "Defendant Austen") is an adult individual who at all times relevant hereto was the Chief Executive Officer of Defendant Tierney and Plaintiff's supervisor.

9. Defendant Debra Griffin (hereinafter "Griffin") is an adult individual who at all times relevant hereto was the Executive Vice President and Chief Financial Officer of Defendant Tierney and Plaintiff's supervisor.

10. Defendant the Interpublic Group of Companies, Inc. ("Defendant IPG") is a corporation that does business in Pennsylvania.

11. Defendant IPG fully owns Defendant Tierney.

12. At all times relevant herein, Defendants acted through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment engagement with Defendants.

## FACTUAL BACKGROUND

13. The foregoing paragraphs are incorporated herein as if set forth in full.

14. Defendants hired Plaintiff on or about February 14, 2011, as an Executive Assistant to Defendants Austen and Griffin.

15. At the time of her hiring, Plaintiff was provided with a copy of Defendant IPG's Employee Handbook.

16. Each and every paycheck issued to Plaintiff was from Defendant IPG.

**Wage and Hour Violations**

17. From the date of her hire until March 26, 2012, Plaintiff was designated as a salaried employee for Defendants.

18. From March 26, 2012 until her termination on September 5, 2012, Defendants designated Plaintiff as an hourly employee.

19. Throughout the course of Plaintiff's employment, Plaintiff performed tasks of a clerical nature for Defendants.

20. Plaintiff's primary job duties were to provide administrative assistance to Defendant Austen.

21. Accordingly, Plaintiff primary duties were as follows:

   a. Answering phone calls and taking messages for Defendant Austen;

   b. Scheduling meetings for and inputting meetings into Defendant Austen's calendar;

   c. Filing and copying; and

   d. Completing forms at the direction of Defendant Austen or Defendant Griffin.

22. At no time during Plaintiff's employment with Defendants was she delegated a responsibility to hire employees.

23. At no time during Plaintiff's employment with Defendants was she delegated a responsibility of terminating employees.

24. At no time during Plaintiff's employment with Defendants was she delegated the responsibility of interviewing employees.

25.     At no time during Plaintiff's employment with Defendants was she delegated a responsibility of giving written disciplinary measures to employees for misconduct or poor work performance.

26.     At no time during Plaintiff's employment with Defendants was she delegated a responsibility to make any meaningful or significant financial decisions within Defendants' business.

27.     At no time during Plaintiff's employment with Defendants did Plaintiff exercise discretion with respect to matters of significance.

28.     At no time during Plaintiff's employment did Plaintiff exercise independent judgment with respect to matters of significance.

29.     During Plaintiff's employment with Defendants, she did not perform any meaningful or typical managerial or supervisory tasks/functions.

30.     At no time during Plaintiff's employment with Defendants was Plaintiff an exempt employee under the Fair Labor Standards Act ("FLSA").

31.     From February 14, 2011 until March 26, 2012, Defendants intentionally failed to pay Plaintiff overtime wages for time worked in excess of 40 hours in a workweek.

32.     Specifically, from February 14, 2011 until March 26, 2012, Plaintiff did not receive any additional compensation for hours worked beyond 40 in a workweek.

33.     From February 2011 until mid-January 2012, Plaintiff consistently worked 45-50 hours per week.

34.     From mid-January 2012 until late March 2012, Plaintiff consistently worked 60-65 hours per week.

35. From late March 2012 until her termination on September 5, 2012, Plaintiff worked approximately 43 hours per week.

36. In or around October 2011, Plaintiff complained to Defendant Griffin about her lack of overtime pay.

37. Thereafter, Plaintiff complained to Defendant Austen about her lack of overtime pay.

38. Shortly after her complaints to Defendants Austen and Griffin, Defendants Austen and Griffin began to retaliate against Plaintiff.

39. Defendant Austen began to verbally reprimand Plaintiff each time she was merely a few minutes late to work.

40. Prior to Plaintiff's complaints about overtime pay, neither Defendants Austen nor Griffin had ever reprimanded Plaintiff for being late to work.

41. Moreover, Defendant Griffin had affirmatively informed Plaintiff on several occasions prior Plaintiff's complaints about overtime, that it did not matter what time Plaintiff arrived at work as long as she completed her daily assignments.

42. In or around March 22, 2012, Plaintiff requested a meeting with Austen as well as Defendant Tierney's Chief Operating Officer, Molly Kuehn Watson ("Watson").

43. During said meeting, Plaintiff complained to Defendant Austen and Watson about the ongoing retaliation she was facing due to her complaints of lack of overtime pay.

44. Thereafter, on March 26, 2012, Defendants Austen and Griffin approached Plaintiff and informed her that she was correct when she alleged she should be paid overtime and advised that Plaintiff would be provided with a check for approximately $15,000 purporting to represent payment for owed overtime.

45.     In response, Plaintiff advised that she did not believe the amount offered fully represented what she was owed in overtime wages.

46.     Defendants did not respond to Plaintiff's objections.

47.     On March 27, 2012, Defendant Austen informed Plaintiff that she was not to work beyond forty (40) hours per week without prior approval.

48.     Nonetheless, Defendants assigned Plaintiff a workload such that it was impossible for her to complete her assignments within her regularly scheduled hours.

49.     Accordingly, Plaintiff was forced to continue working in excess of forty (40) hours per week.

50.     Defendants were aware that Plaintiff was continuing to work in excess of forty (40) hours per week.

51.     Nonetheless, Defendants did not offer Plaintiff any compensation for overtime hours.

52.     From April 2012 until her termination on September 5, 2012, Plaintiff continued to complain about the lack of overtime compensation, as well as the retaliation she faced from Austen and Griffin as a result of her complaints about same.

53.     Each time Plaintiff complained about overtime and/or retaliation, Defendants suggested that Plaintiff quit her job.

54.     In fact, on several occasions, Defendants offered Plaintiff a severance package in return for her resignation.

55.     Each time Plaintiff informed Defendants that she did not wish to resign from her position and that she was only requesting proper overtime compensation, and that she wanted Austen and Griffin to cease the retaliation related to her complaints about overtime.

56. In or around August 2012, Plaintiff contacted Ileana Kutler, Assistant General Counsel for Defendant IPG, to report Defendants ongoing wage and hour violations as well as the retaliation she was facing for her complaints about same.

57. At the time Plaintiff reported that she feared termination for her complaints.

58. Kutler initially responded that Plaintiff should not fear termination for her complaints.

59. Nonetheless, on September 5, 2012, Defendants fired Plaintiff.

60. Plaintiff was informed by Defendants that she had been selected for layoff.

61. Nonetheless, upon information and belief, Defendants replaced Plaintiff shortly after her "layoff."

62. In fact, Defendants fired Plaintiff, because she complained about Defendants' ongoing wage and hour violations.

**FMLA Violations**

63. In or around 1992, Plaintiff began to periodically suffer from panic attacks and episodes of depression related to same.

64. In or around late winter and early Spring 2012, Plaintiff again began to suffer from panic attacks due to the stress at work resulting in a depressive episode, caused by the retaliation in response to her complaints about lack of overtime.

65. In or about March 2012, Plaintiff requested FMLA leave from Defendants.

66. Thereafter, Defendants approved Plaintiff for approximately 41 days of FMLA leave to treat her panic attacks and depressive episode.

67. Plaintiff began her FMLA leave on March 29, 2012.

68. Plaintiff returned to work full time without restrictions on May 24, 2012.

69. In or around December 2011, Plaintiff was diagnosed with hypersomnia and sleep apnea.

70. During the spring of 2012, Plaintiff developed obstructive sleep apnea as a result her worsening hypersomnia.

71. Accordingly, in or around May 2012, Plaintiff's physician required that she undergo surgery to treat her sleep apnea issues.

72. In or around late May 2012, Plaintiff applied for and was granted FMLA leave related to her hypersomnia and sleep apnea.

73. Specifically, Plaintiff was granted a leave of absence from June 5, 2012 through June 20, 2012 as well as intermittent FMLA leave from May 29, 2012 through December 2012.

74. During Plaintiff's June FMLA leave, Defendants suggested that Plaintiff accept a severance agreement in exchange for her voluntary resignation.

75. Upon Plaintiff's return from her FMLA leave in June 2012, Plaintiff occasionally requested additional intermittent FMLA leave to treat her hypersomnia and sleep apnea.

76. Defendants fired Plaintiff, in-part, in retaliation for her having taken an FMLA leave and to prevent her from taking future FMLA leave.

## COUNT I
### Fair Labor Standards Act ("FLSA")
**(Overtime Compensation)**

77. The foregoing paragraphs are incorporated herein as if set forth in full.

78. At all times relevant herein, Defendants have and continue to be an employer within the meaning of the Fair Labor Standards Act, 29 U.S.C. §203 ("FLSA").

79. At all times relevant herein, Plaintiff was employed with Defendants as an "employee" within the meaning of the FLSA.

80. At all times relevant herein, Plaintiff was a non-exempt employee within the meaning of the FLSA.

81. Under the FLSA, an employer must pay a non-exempt employee for each and every hour worked, and time and one-half the regular rate of pay for each hour worked over 40 hours in a workweek.

82. Defendants' violations of the FLSA include, but are not limited to: not paying Plaintiff overtime for the hours/weeks she worked over forty (40) hours in each workweek.

83. As a result of Defendant's actions as described above, Defendants violated the FLSA, causing Plaintiff to suffer damages.

## COUNT II
## Fair Labor Standards Act
### (Retaliation)

84. The foregoing paragraphs are incorporated herein as if set forth in full.

85. Plaintiff's complaints to management regarding their failure to pay overtime constitute protected activities pursuant to the FLSA.

86. Defendants terminated Plaintiff, in part, for her complaining of overtime violations.

87. The aforementioned conduct of Defendants is in violation of the FLSA.

88. As a result of Defendant's actions as described above, Defendants violated the FLSA, causing Plaintiff to suffer damages.

## COUNT III
## Violations of the Family and Medical Leave Act
### (Interference)

89. The foregoing paragraphs are incorporated herein as if set forth in full.

90. Plaintiff was an eligible employee under the definitional terms of the FMLA.

91. As of March 29, 2012, Plaintiff was employed by Defendants for at least twelve (12) months.

92. Further, Plaintiff had at least 1,250 hours of service with Defendants during the twelve (12) month period proceeding March 29, 2012.

93. Defendants are engaged in an industry affecting commerce and employed fifty (50) or more employees for twenty (20) or more calendar workweeks in 2012.

94. Beginning March 29, 2012, Plaintiff required time off from work to treat her own serious health condition.

95. Thereafter, beginning in May 2012, Plaintiff was approved for intermittent leave to treat an ongoing serious health condition.

96. Defendants interfered with Plaintiff's FMLA rights by firing her to prevent her from taking further FMLA leave.

97. As a result of Defendants' actions as described above, Defendants violated the FMLA causing Plaintiff to suffer damages.

**COUNT 1V**
**Violations of the Family and Medical Leave Act**
**(Retaliation)**

98. The foregoing paragraphs are incorporated herein as if set forth in full.

99. Defendants retaliated against Plaintiff for exercising her FMLA rights by firing her on September 5, 2012.

100. Defendants retaliated against Plaintiff for exercising her FMLA rights by not reinstating her after September 5, 2012.

101. As a result of Defendants' actions as described above, Defendants violated the FMLA causing Plaintiff to suffer damages.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to be prohibited from continuing to maintain its illegal policy, practice or custom in violation of the FLSA;

B. Defendants are to be prohibited from continuing to maintain its illegal policy, practice, or custom of discriminating against employees or prospective employees based on their need to take FMLA qualifying leaves and/or their health conditions;

C. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, pain and suffering damages, punitive damages, bonuses, medical and other benefits, training, promotions, pension, and seniority.  Plaintiff should be accorded those benefits illegally withheld from the date she first suffered discrimination at the hands of Defendants until the date of verdict;

D. Plaintiff is to be awarded liquidated damages and/or punitive damages in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for its willful, deliberate, malicious, and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future (liquidated damages are not sought under the FMLA);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal law;

F. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

                                          Respectfully submitted,

                                          **SWARTZ SWIDLER, LLC**

                                          s/Manali Arora_____
                                          Manali Arora, Esq.
                                          1878 Marlton Pike East, Suite 10
                                          Cherry Hill, NJ 08003
                                          (856) 685-7420
                                          (856) 685-7417 Fax

Dated: December 6, 2012